No. 22-1394

United State Court of Appeals
For The First Circuit

CLARE E. MUNDELL,

*Plaintiff–Appellee,*

v.

ACADIA HOSPITAL CORP.,

*Defendant–Appellant,*

EASTERN MAINE HEALTHCARE SYSTEMS,

*Defendant.*

On Appeal from the United States District Court
for the District of Maine, Portland
Case No. 1:21-cv-00004-LEW

**BRIEF OF APPELLEE CLARE E. MUNDELL**

Valerie Z. Wicks
First Circuit Bar No. 1203877
Borealis Law, PLLC
97 India Street
Portland, ME 04101
(207) 613-6580
val@maineworkerjustice.com

David G. Webbert
First Circuit Bar No. 50820
Johnson & Webbert, LLP
160 Capitol Street, Suite 3
Augusta, ME 04330
(207) 623-5110
dwebbert@work.law

# Table of Contents

Table of Authorities ........................................................................................iv

Statement of Issues.........................................................................................1

Statement of the Case......................................................................................2

1.  Dr. Mundell earned a nearly perfect evaluation
    and was lauded for the high quality of her work
    and her professionalism as a pool psychologist .....................................2

2.  Acadia admits that it paid its three female
    pool psychologists $50 per hour and its two males
    $90-95 per hour for comparable work......................................................2

3.  Acadia eventually acted on this extreme pay
    disparity by setting a single pay for all pool
    psychologists but delaying the decrease for
    the men to "ease their transition." ..........................................................3

4.  Dr. Mundell filed for summary judgement on
    her claim under the Maine Equal Pay Law
    for unequal pay for "comparable work."..................................................4

5.  In January 2022, after the District Court signaled
    at oral argument its likely ruling for Dr. Mundell,
    Acadia suddenly moved for certification ................................................5

6.  The District Court granted summary judgment on
    Dr. Mundell's MEPL claim, based on statutory language and
    applicable case law, and denied certification
    because the likely course of the Maine Law Court
    was reasonably clear................................................................................5

7.  After the parties agreed on the underlying damages,
    final judgment was entered on Dr. Mundell's Count I
    claim under MEPL....................................................................................6

8.  Acadia appealed and then filed a motion for
    certification, which this Court denied without
    prejudice ................................................................... 7

Summary of the Argument ............................................... 7

Argument ......................................................................... 10

I.   The Plain Language of the Maine Equal Pay Law
     Does Not Require Discriminatory Intent and Allows
     Only the Three Affirmative Defenses It Enumerates .......................... 10

     A.  The District Court correctly interpreted
         MEPL's plain language ...................................... 11

     B.  MEPL's federal analogue does not require
         proof of discriminatory animus ....................... 18

     C.  MEPL's legislative history bolsters its
         plain language ................................................. 25

     D.  Acadia's policy arguments are irrelevant
         and unfounded ................................................ 26

     E.  Dr. Mundell has proven that Acadia violated
         MEPL ................................................................ 27

II.  Dr. Mundell is Entitled to Her Unpaid Wages
     And Liquidated Damages Under Penalties Provision
     of the Maine Wage Law ......................................... 29

     A. Both plain language and Law Court precedent
        support treble damages ................................... 29

     B. The District Court's decision is entirely consistent
        with the purpose of MEPL .............................. 33

     C. There is nothing absurd about paying men and women equally for
        comparable work ............................................ 33

III.    Certification is Inappropriate Because it is Reasonably
        Clear That the Law Court Would Reject Acadia's
        Novel Interpretation of Maine's Equal Pay Law .................................. 36

Conclusion ........................................................................................................ 39

Certificate of Compliance with Rule 32(a)(7) .................................................. 42

Certificate of Service ........................................................................................ 43

Addendum ........................................................................................................ 44

## Table of Authorities

**Cases**

*Barton v. Clancy*
  632 F.3d 9 (1st Cir. 2011) ............................................................11

*Bauer v. Curators of Univ. of Mo.*
  680 F.3d 1043 (8th Cir. 2012) ....................................................20

*Beck-Wilson v. Principi*
  441 F.3d 353 (6th Cir. 2006) ......................................................20

*Beckwith v. United Parcel Serv., Inc.*
  889 F.2d 344 (1st Cir. 1989)...................................................30, 31

*Belfi v. Prendergast*
  191 F.3d 129 (2d Cir. 1999)..........................................................20

*Bisbing v. Me. Med. Ctr.*
  820 A.2d 582 (Me. 2003)................................................................34

*Bostock v. Clayton Cnty.*
  140 S. Ct. 1731 (2020)................................................9, 14, 17, 40

*Cooper v. Springfield Terminal Railroad Co.*
  635 A.2d 952 (Me. 1993)................................................1, 30, 34, 39

*Corning Glass Works v. Brennan*
  417 U.S. 188 (1974)................................................................8, 20

*Dir. of Bureau of Labor Standards v. Cormier*
  527 A.2d 1297 (Me. 1987)..............................................................33

*Easthampton Sav. Bank v. City of Springfield*
  736 F.3d 46 (1st Cir. 2013)..........................................................10

*EEOC v. Del. Dept. of Health and Soc. Servs.*
  865 F.2d 1408 (3d Cir. 1989).........................................................20

*EEOC v. Md. Ins. Admin.*
  879 F.3d 114 (4th Cir. 2018) .........................................................20

*Enica v. Principi*
  544 F.3d 328 (1st Cir. 2008).........................................................14

*Fallon v. State of Ill.*
  882 F.2d 1206 (7th Cir. 1989) .......................................................20

*Giguere v. Port Res., Inc.*
  927 F.3d 43 (1st Cir. 2019)..............................................30, 33, 34

*González Figueroa v. J.C. Penney P.R., Inc.*
  568 F.3d 313 (1st Cir. 2009)...........................................................1

*In re Wage Payment Litig.*
  759 A.2d 217 (Me. 2000)...............................................................30

*Int'l Bhd. of Teamsters v. United States*
  431 U.S. 324 (1977)......................................................................13

*Jancey v. School Committee of Everett*
  658 N.E.2d 162 (1995)..................................................................21

*Ken's Foods, Inc. v. Steadfast Ins. Co.*
  36 F.4th 37 (1st Cir. 2022)......................................................37, 38

*McMillan v. Mass. Soc. for Prevention of Cruelty to Animals*
  140 F.3d 288 (1st Cir. 1998)......................................................9, 20

*Me. Hum. Rts. Comm'n v. City of Auburn*
  408 A.2d 1253 (Me. 1979)......................................................passim

*Merillat v. Metal Spinners*
  470 F.3d 685 (7th Cir. 2006) .......................................................25

*Mickelson v. N.Y. Life Ins. Co.*
  460 F.3d 1304 (10th Cir. 2006) ....................................................20

*Miranda v. B & B Cash Grocery Store, Inc.*
  975 F.2d 1518 (11th Cir. 1992) ....................................................20

*Musk v. Nelson*
  647 A.2d 1198 (Me. 1994)............................................................17

*Noll v. Flowers Foods, Inc.*
  No. 1:15-cv-00493-LEW, 2021 WL 904859 (D. Me. Mar. 9, 2021)............31

*O'Connor v. Oakhurst Dairy*
  851 F.3d 69 (1st Cir. 2017)............................................................33

*Rizo v. Yovino*
  950 F.3d 1217 (9th Cir. 2020) ......................................................20

*Rooney v. Sprague Energy Corp.*
  519 F. Supp. 131 (D. Me. 2007) ....................................................15

*Scamman v. Shaw's Supermarkets, Inc.*
  157 A.3d 223 (Me. 2017)............................................10, 22, 23, 24

*Siler-Khodr v. Univ. Tex. Health Sci. Ctr. San Antonio*
  261 F.3d 542 (5th Cir. 2001) ........................................................20

*State v. Brown*
  95 A.3d 82 (Me. 2014)..................................................................16

*State v. Lowden*
  87 A.3d 694 (Me. 2014)................................................................14

*Thompson v. Sawyer*
  678 F.2d 257 (D.C. Cir. 1982) ......................................................20

*Wescott v. Allstate Ins.*
  397 A.2d 156 (Me. 1979)..............................................................17

*Whitney v. Wal-Mart Stores, Inc.*
  895 A.2d 309, 315 (Me. 2006)......................................15, 17, 26

## Statutes

5 M.R.S. § 4553(2)(C)(1) ................................................................. 13

5 M.R.S. § 4572(1)(A) .............................................................. 14, 23

5 M.R.S. § 4592(7) ......................................................................... 13

26 M.R.S. §§ 601, 621-A, 626, 664 ................................... 16, 27, 29

26 M.R.S. § 626-A ................................................................... passim

26 M.R.S. § 628 ....................................................................... passim

26 M.R.S. § 781 ............................................................................ 16

29 U.S.C. § 206(d) .................................................................. passim

29 U.S.C. §§ 621-634 ............................................................... 23, 24

42 U.S.C. § 12112 ......................................................................... 13

42 U.S.C. §§ 2000e–2000e-17 ........................................... 13, 23, 31

Mass. Gen. Laws Ann. ch. 149, § 105A ......................................... 21

P.L. 1949, ch. 262, § 40-A (effective Aug. 6, 1949) ...................... 25

P.L. 1965, ch. 150 (effective Sept. 3, 1965) .................................. 26

P.L. 2019, ch. 35, § 3 (effective Sept. 19, 2019) ........................... 26

## Other Authorities

Equal Pay Act of 1963, Pub. L. No. 88-38, § 3, 77 Stat. 56, 56-57 ................ 25

Jasmine Tucker, The Wage Gap Has Robbed Women of Their
  Ability to Weather COVID-19 (Mar. 2021), https://nwlc.org/wp-
  content/uploads/2021/03/EPD-2021-v1.pdf ................................... 36

Office of the Mass. Attorney General,
  "An Act to Establish Pay Equity: Overview and Frequently
  Asked Questions" (last updated March 1, 2018) (available at
  https://www.mass.gov/files/documents/2018/03/01/AGO%20Equal%20
  Pay%20Act%20Guidance.pdf) ....................................................................21

Scalia & Garner, Reading Law: The Interpretation of
  Legal Texts 107 (2012)..........................................................................17, 18

**Statement of Issues**

1.      The Maine Equal Pay Law ("MEPL") prohibits employers from discriminating "on the basis of sex" in a particular way: "by" paying men and women unequal wages for comparable work unless one of three specific affirmative defense applies. The analogous federal statute, the Equal Pay Act, has been uniformly interpreted not to require proof of discriminatory animus or intent. Based on the statutory text and the federal precedents, did the District Court correctly hold that MEPL does not require proof of discriminatory intent?

2.      In *Cooper v. Springfield Terminal Railroad Co.*, 635 A.2d 952, 955 (Me. 1993), the Maine Law Court held that the remedies listed in the second paragraph of the "Penalties" provision of the Maine Wages and Medium of Payment subchapter, 26 M.R.S. § 626-A, are recoverable for violations of the sections listed in the first paragraph of that provision, so long as there are unpaid wages at stake. Did the District Court correctly apply *Cooper* and related precedent in holding that the remedies under MEPL are those listed in paragraph two of Section 626-A, including treble damages and attorney's fees?

3.      This Court has "held with monotonous regularity that certification is inappropriate when the course that the state courts would take is reasonably clear." *González Figueroa v. J.C. Penney P.R., Inc.*, 568 F.3d 313, 323 (1st Cir. 2009). Did the District Court correctly find that certification is inappropriate here because

1

the course that the Maine Law Court would take on MEPL liability and damages is reasonably clear?

**Statement of the Case**

**1.     Dr. Mundell earned a nearly perfect evaluation and was lauded for the high quality of her work and her professionalism as a pool psychologist.**

Dr. Clare E. Mundell worked at Acadia Hospital in Bangor, Maine as a pool psychologist for nearly two and a half years. In that role, she provided psychological services at the hospital, including psychological testing, psychological consultation, group psychology, individual psychotherapy, and crisis intervention. Amended Appendix ("A.") 69. Dr. Mundell excelled in the pool psychologist position. For example, in her 2019 performance evaluation, she received an average rating of 4.97 on a scale of 1-5. A. 13. Her supervisor described her as "a dependable and reliable colleague who presents with a high level of professionalism." A. 13. She was further described as "an asset to the hospital and to the psychologist team" who "provid[ed] high quality work" and was "on the forefront of problem solving." A. 13, 29.

**2.     Acadia admits that it paid its three female pool psychologists $50 per hour and its two males $90-95 per hour for comparable work.**

During her employment with Acadia, Dr. Mundell worked with four other pool psychologists in the Bangor hospital, two women and two men. A. 69. Acadia admitted that it paid the male pool psychologists $95 or $90 per hour, Dr. Mundell

$50 per hour, and the other two female pool psychologists $50 per hour or a salary equivalent to a rate of $48.82 per hour. A. 69-70. Acadia further admitted that Dr. Mundell performed comparable work to the male pool psychologists in jobs that had comparable requirements relating to skill, effort and responsibility. A. 70. Acadia also admitted that it did not pay Dr. Mundell less than the male pool psychologists pursuant to an established seniority system, a merit increase system, or a difference in shift or time of day worked. A. 70.

### 3. Acadia eventually acted on this extreme pay disparity by setting a single rate of pay for all pool psychologists but delaying the decrease for the men to "ease their transition."

In 2019 and early 2020, Acadia management focused on the pay disparity among pool psychologists following a hospital-wide compensation study. A. 18, 30. Management's solution was to set the rate of pay for all pool psychologists at $57 per hour. A. 27, 86. Acadia then decided to defer the reduction in pay for the male pool psychologists for another three months to "ease their transition" to the new rate. A. 27, 86.[1]

---

[1] Acadia's statement of the facts on appeal includes irrelevant and controverted assertions about its alleged lack of discriminatory animus. For example, Acadia asserts that Dr. Mundell's "rate of pay was established solely with reference to the market rate for her services as a pool psychologist and sex had nothing to do with it." App. Br. 4. Of course, the District Court granted summary judgment on the ground that MEPL does not require proof of discriminatory animus or intent, so Acadia's intent is not relevant to its appeal. Moreover, Dr. Mundell moved in the District Court to strike this statement of fact by Acadia as an unsupported

**4.      Dr. Mundell filed for summary judgment on her claim under the Maine Equal Pay Law for unequal pay for "comparable work."**

In January 2021, Dr. Mundell filed a complaint against Acadia and Eastern Maine Healthcare Systems in the United States District Court for the District of Maine. A. 8-26. The complaint alleged denial of equal pay for "comparable work" in violation of the Maine Equal Pay Law ("MEPL") (Count I), as well as sex discrimination and retaliation in violation of Title VII, the Maine Human Rights Act, the Maine Whistleblowers' Protection Act, and MEPL (Counts II and III). A. 22-24.

In September 2021, Dr. Mundell moved for partial summary judgment on her MEPL claim (Count I). A. 3. The parties submitted competing briefs and statements of material fact. ECF Nos. 13, 15, 19; A. 36-91. Dr. Mundell moved for oral argument and Acadia opposed it. A. 4. After initially denying Dr. Mundell's motion for oral argument, the District Court decided to hold oral argument, invited supplemental authority, and previewed its areas of inquiry for the parties. A. 4, 92-94. Dr. Mundell submitted supplemental authority tailored to the District Court's request; Acadia submitted none. ECF No. 26; A. 4.

---

conclusory fact and legal argument; and she further denied that sex had "nothing to do with" her rate of pay. *See* A. 85-86. The District Court did not explicitly resolve this request to strike, likely because it was not necessary to resolve the summary judgment motion.

**5.     In January 2022, after the District Court signaled at oral argument its likely ruling for Dr. Mundell, Acadia suddenly moved for certification.**

On January 11, 2022, the District Court held oral argument, the tenor of which suggested that a ruling in Dr. Mundell's favor was forthcoming.[2] The next day, well over three months after it filed its opposition to Dr. Mundell's motion for partial summary judgment, Acadia filed a Motion for Certification to the Maine Supreme Judicial Court ("Law Court"), ECF No. 28, and Dr. Mundell responded. ECF No. 29.

**6.     The District Court granted summary judgment on Dr. Mundell's MEPL claim, based on statutory language and applicable case law, and denied certification because the likely course of the Maine Law Court was reasonably clear.**

On February 8, 2022, the District Court granted Dr. Mundell's motion for partial summary judgment on her MEPL claim and denied Acadia's motion for certification to the Law Court. Addendum of Appellant/Defendant Acadia Hospital Corporation ("Add.") 1-22. Specifically, the District Court analyzed MEPL's statutory language as well as the applicable case law under the analogous federal

---

[2] *E.g.,* A. 96-97 (Judge Walker: "[T]he subset of that dispute seems to rest in whether defendant should be given the opportunity for a catchall provision which on the plain reading of the statute at least I can't see exists to demonstrate a nondiscriminatory motive beyond the enumerated defenses provided in the statute."); A. 123-24 (Judge Walker: "Doesn't that pretty strongly indicate to us that the Maine legislature has intended to fashion a statute that is so-called strict liability equal pay statute in keeping with the Massachusetts statute and the Supreme Court case interpreting it?").

statute—the Equal Pay Act—and held that MEPL does not impose an intent requirement or allow affirmative defenses that do not appear in the text of the statute, Add. 6-15; that MEPL violators owe treble damages, Add. 19-22; and that certification was inappropriate because it was reasonably clear that the Law Court would reach these same conclusions, Add. 6, 10-13, 19-20.

**7.     After the parties agreed on the underlying damages, final judgment was entered on Dr. Mundell's Count I claim under MEPL.**

Once the parties filed a Stipulation on Remedies, A. 134-36, Dr. Mundell filed a Motion for an Order on Damages Owing to Plaintiff on her Count I MEPL claim, ECF No. 42, which the District Court granted over Acadia's objection. ECF Nos. 43, 47. On May 10, 2022, the District Court issued an Amended Order on Damages and ordered Acadia to pay damages to Dr. Mundell in the amount of $180,955.90 on her Count I MEPL claim. Add. 23-24.

After the District Court entered this order on damages, the parties filed a Joint Stipulation of Dismissal as to (1) all counts of the Complaint against Defendant Eastern Maine Healthcare Systems and (2) Counts II and III against Defendant Acadia. A. 137-38. On May 12, 2022, the District Court Clerk entered Judgment for Dr. Mundell and against Acadia in the amount of $180,955.90 on Count I, and entered a judgment of dismissal on Counts II and III against Acadia

and on all counts against Eastern Maine Healthcare Systems. Add. 25. This constituted a final judgment on all of Dr. Mundell's claims.

### 8. Acadia appealed and then filed a motion for certification, which this Court denied without prejudice.

On May 17, 2022, Acadia filed a timely appeal. A. 139. On June 16, 2022, Acadia filed a motion asking this Court to certify the questions on appeal to the Law Court, which was denied without prejudice to reconsideration by the merits panel. July 18, 2022 Order; Brief of Appellant Acadia Hospital Corp. (App. Br.) 7.

## Summary of the Argument

The text of the Maine Equal Pay Law ("MEPL") is clear: it does not require proof of discriminatory intent by plaintiffs and does not provide a catchall affirmative defense for defendants. Under MEPL, employers may not "discriminate" "between employees" "in the same establishment" "on the basis of sex" "by" paying lower wages to employees of the opposite sex for "comparable work," unless an exception applies. 26 M.R.S. § 628. The text makes clear what "discriminate" "on the basis of sex" means for purposes of the law: an employer violates MEPL "by" paying different wages to a woman and a man "for comparable work," unless an exception applies.

This plain-language interpretation is bolstered by the long-standing statutory canon of the Maine Law Court that when the Maine Legislature adopts provisions

that "generally track" federal antidiscrimination statutes, the Maine Legislature intends courts "to look to the federal case law to provide significant guidance in the construction" of the Maine statute. *Me. Hum. Rts. Comm'n v. City of Auburn*, 408 A.2d 1253, 1261 (Me. 1979) (cleaned up). MEPL generally tracks the federal Equal Pay Act ("FEPA"), 29 U.S.C. § 206(d), which also instructs that employers may not "discriminate" "between employees" "within any establishment" "on the basis of sex" "by" paying lower wages to employees of the opposite sex for equal work, unless an exception applies. Because the textual framework of MEPL generally tracks FEPA, case law interpreting FEPA provides "significant guidance" under Maine law on how to interpret MEPL. *City of Auburn*, 408 A.2d at 1261.

The United States Supreme Court, this Circuit, and every other federal circuit court have held that there is no intent requirement under FEPA. But the plaintiff still has the significant initial burden of proving that her employer paid her less than a male co-worker in the same establishment for performing equal work. If the plaintiff makes out this prima facie case, the burden shifts to the defendant to prove that the pay disparity can be explained by one of the law's enumerated defenses. *See, e.g., Corning Glass Works v. Brennan*, 417 U.S. 188, 195–96 (1974); *McMillan v. Mass. Soc. for Prevention of Cruelty to Animals*, 140 F.3d

288, 298 (1st Cir. 1998). This federal case law provides significant guidance on how to interpret MEPL. *See City of Auburn*, 408 A.2d at 1261.

Acadia's appeal ultimately boils down to a request—based on its view of what is good for business—that this Court disregard the plain meaning of the statutory text, supporting federal precedent, and legislative history, and instead superimpose a catchall affirmative defense that the Maine legislature specifically chose to omit. It is elementary, however, that courts may not supplant the policy choices of the legislature by rewriting statutes. *See, e.g., Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020) ("This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end.").

And contrary to Acadia's assertions, the sky will not fall if this Court upholds the District Court's plain-meaning interpretation of MEPL. Equal pay cases are not easy for plaintiffs to win; they typically involve protracted disputes about whether the employees of the opposite sex in fact performed "comparable work" on jobs with "comparable requirements" under MEPL or "equal work" on jobs with equal requirements under FEPA. This case is unusual because Acadia admitted the key MEPL elements: that Dr. Mundell and her male co-workers performed "comparable work" on jobs with "comparable requirements."

Statutory text and binding precedent likewise dictate that Dr. Mundell is owed treble damages and attorney's fees as part of her MEPL damages. The

District Court correctly concluded that this was the only reasonable interpretation of the plain language of the "Penalties" provision of the Maine Wages and Medium of Payment subchapter, 26 M.R.S. § 626-A, and case law interpreting that section.

Finally, certification is not necessary because it is "reasonably clear" how the Maine Law Court would resolve this case. *Easthampton Sav. Bank v. City of Springfield*, 736 F.3d 46, 51 (1st Cir. 2013). The plain language of MEPL, the unanimous precedents under the analogous text of FEPA, and the Maine precedents on available damages provide more than enough evidence of how Maine's highest Court would likely resolve the issues of statutory interpretation raised on appeal. The District Court correctly rejected Acadia's last-minute certification attempt after oral argument on summary judgment.

## Argument

I. **The Plain Language of the Maine Equal Pay Law Does Not Require Discriminatory Intent and Allows Only the Three Affirmative Defenses It Enumerates.**

The District Court correctly held that MEPL does not require a showing of discriminatory intent by plaintiffs or allow affirmative defenses for defendants that do not appear in the statute. It made this finding based on the text of the statute, relevant precedents, and the legislative history of the statute, consistent with the Maine Law Court's approach to questions of statutory interpretation. *See Scamman v. Shaw's Supermarkets, Inc.*, 157 A.3d 223, 229 (Me. 2017) (dictating that courts

must first consider "the statute's plain meaning and the entire statutory scheme of which the provision at issue forms a part," and may look beyond the text to "other indicia of legislative intent, such as legislative history," if the plain meaning is ambiguous (quoting *Samsara Mem'l Tr. v. Kelly, Remmel & Zimmerman*, 102 A.3d 757, 771 (Me. 2014))); *see also Barton v. Clancy*, 632 F.3d 9, 17 (1st Cir. 2011) (explaining that when a state's highest court has not spoken directly on a question of state law, federal courts must predict "how that court likely would decide the issue, looking to the relevant statutory language, analogous decisions of the state supreme court, decisions of the lower state courts, and other reliable sources of authority" (cleaned up)).

## A. The District Court correctly interpreted MEPL's plain language.

The statutory text of MEPL is clear: if employees of the opposite sex in the same establishment perform comparable work on jobs with comparable requirements as to skill, effort, and responsibility, their employer must pay them equally unless one of the statute's enumerated affirmative defenses apply. Under MEPL:

> An employer may not discriminate between employees in the same establishment on the basis of sex by paying wages to any employee in any occupation in this State at a rate less than the rate at which the employer pays any employee of the opposite sex for comparable work on jobs that have comparable requirements relating to skill, effort and responsibility. Differentials that are paid pursuant to established seniority systems or merit increase systems or difference the shift or

time of the day worked that do not discriminate on the basis of sex are not within this prohibition.

26 M.R.S. § 628.

Based on the plain language of 26 M.R.S. § 628, a plaintiff bringing a MEPL claim must show that (1) their employer; (2) paid them wages at a rate less than the rate paid to an employee of the opposite sex; (3) in the same establishment; (4) for comparable work on jobs with comparable requirements relating to skill, effort and responsibility. Once the plaintiff makes this showing, the employer can avoid liability only if it can prove one of the three defenses enumerated in the statute: that the difference in pay was the result of a non-discriminatory (1) established seniority system; (2) established merit increase system; or (3) difference in shift or time of day worked. 26 M.R.S. § 628.

Acadia incorrectly asserts that the words "discriminate . . . on the basis of sex" imply an intent requirement. App. Br. 11-12. The District Court carefully analyzed the statutory text and determined that it does not evidence any intent requirement:

> MEPL states, in relevant part: "An employer may not discriminate between employees . . . on the basis of sex *by* paying [unequal wages] for comparable work . . . ." 26 M.R.S. § 628 (emphasis added). This sentence contains two clauses connected by a preposition. The first clause states that employers may not discriminate on the basis of sex. The second clause establishes how an employer discriminates on the basis of sex for purposes of the statute: by paying unequal wages. . . . Likewise, if a referee at a football game were to instruct that "players may not engage in unsportsmanlike conduct by celebrating after a

touchdown," it would be beside the point to argue about whether a particular celebration was unsportsmanlike—the referee removed all ambiguity by defining the conduct that is deemed unsportsmanlike. Just so here: the act of paying unequal wages for comparable work establishes discrimination on the basis of sex under the statute.

Add. 7-8. Put more simply, "the means through which discrimination is achieved, for the purpose of MEPL, is the payment of unequal wages for comparable work." Add. 8.

Moreover, as the District Court found, the phrase "discriminate . . . on the basis of sex" does not automatically mean discriminatory intent. Add. 12. Indeed, the text of 42 U.S.C. 2000e-2(k), the disparate impact section of Title VII, uses the phrase "on the basis of" to define what counts as illegal discrimination under the law. Similarly, the Maine Human Rights Act uses the phrase "discriminat[e] on the basis of" to refer to disparate-impact discrimination in employment, 5 M.R.S. § 4553(2)(C)(1), and to refer to disparate-impact disability discrimination in public accommodations, *id.* § 4592(7). The disparate-impact theory of discrimination does not require any showing of intent. *E.g.*, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

The Americans with Disabilities Act also uses the phrase "discriminate . . . on the basis of." 42 U.S.C. § 12112(a). It defines that phrase to include disparate-impact discrimination, *id.* § 12112(b)(3)(A), (b)(6)-(7), and failing to accommodate a known disability, *id.* § 12112(b)(5)(A). Neither of those

types of unlawful disability discrimination under the ADA include discriminatory intent or animus as an element for establishing liability. *See, e.g.*, *Enica v. Principi*, 544 F.3d 328, 339 (1st Cir. 2008) (noting that "a showing of discriminatory intent or animus is not required" to prove failure to accommodate under the ADA).

The Supreme Court's recent decision in *Bostock v. Clayton County* reinforces this point. There, the Court made clear that the word "discriminate" simply means to "treat[] [one] individual worse than others who are similarly situated." 140 S. Ct. at 1740. Thus, the words "discriminate . . . on the basis of sex"—meaning, treat two otherwise similarly-situated people differently—do not necessarily imply intentional discrimination.[3]

Acadia incorrectly argues that the Maine Department of Labor ("MDOL") has adopted a contrary interpretation of "discriminate . . . on the basis of sex" and established an intent requirement for MEPL claims through its rules relating to equal pay. App. Br. 15-16; Add. 26-32. Even assuming MDOL has adopted such an interpretation, Acadia's argument must fail. The plain meaning of MEPL

---

[3] Adding an intent requirement would render MEPL largely superfluous. *See State v. Lowden*, 87 A.3d 694, 697 (Me. 2014) ("Nothing in a statute may be treated as surplusage if a reasonable construction applying meaning and force is otherwise possible."). Intentional sex discrimination in the terms of employment, including compensation, is separately prohibited by the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A) (providing that it is unlawful employment discrimination for any employer "to discriminate with respect to . . . compensation, terms, conditions or privileges of employment" because of sex).

includes no intent requirement. An agency interpretation of MEPL to require intent would be "invalid" as "contrary to the plain meaning of the statute" for the reasons already explained. *Whitney v. Wal-Mart Stores, Inc.*, 895 A.2d 309, 315 (Me. 2006) (rejecting an agency's interpretation of the term "disability" because it required a showing of substantial limitation on a major life activity, which the Legislature unambiguously "chose[] not to include" in the statutory definition of "disability" prior to 2007), *superseded by statute as stated in Rooney v. Sprague Energy Corp.*, 519 F. Supp. 131, 133-34 (D. Me. 2007).

Acadia's argument also fails because nothing in the text of the MDOL rules states that pay disparities must be intentionally discriminatory to state a claim under MEPL. Add. 26-32. The rules simply set forth a regulatory framework for investigating administrative complaints under MEPL.[4] Under that framework, MDOL may presume an employer's compliance with MEPL if the employer has completed a "self-evaluation" meeting certain requirements, Add. 30-31, and may seek "voluntary compliance agreements" with employers to resolve meritorious complaints of discrimination, Add. 29. Contrary to Acadia's assertions, these provisions merely indicate that MDOL has sought to reserve the state's investigative resources and civil prosecutorial authority for willfully non-compliant

---

[4] To the extent Acadia asserts that MDOL's investigative procedures apply to this action, that is flat wrong. Dr. Mundell did not file an administrative complaint with MDOL.

employers—not that it interprets MEPL to require such leniency. *Cf. State v. Brown*, 95 A.3d 82, 88 (Me. 2014) (acknowledging that "the vigor with which regulations are enforced is often subject to governmental discretion[,] which is in turn informed by policy choices, priorities, and resources").

Next, Acadia makes the unfounded claim that MEPL's larger statutory scheme suggests an intent requirement. App. Br. 13. Contrary to Acadia's assumption, the statute need not use the term "strict liability" to denote the lack of an intent requirement. As the District Court explained, "in the context of Maine wage law there is no precedent to suggest that non-payment or under-payment of wages could ever be excused by the employer's demonstration of a lack of intent to violate the law." Add. 13. That Acadia found one reference to strict liability in Maine's "Employment Practices" chapter—in a subheading in a different section, article, and subchapter than MEPL—does not change this conclusion. App. Br. 13 (citing 26 M.R.S. § 781). Indeed, Maine's Employment Practices chapter, and its Wages and Medium of Payment subchapter in particular, is jam-packed with strict-liability statutes that do not use the term "strict liability." *E.g.,* 26 M.R.S. §§ 601, 621-A, 626, 664.

Further, Acadia's suggestion that other affirmative defenses are available beyond the three affirmative defenses specifically listed in 26 M.R.S. § 628, *see* App. Br. 13, is at odds with the "well-settled rule of statutory interpretation" that

"express mention of one concept implies the exclusion of others not listed." *Musk v. Nelson*, 647 A.2d 1198, 1201-02 (Me. 1994). By explicitly enumerating three exceptions to liability, MEPL "implicitly denies the availability of any other." *Id.* at 1202; *see also Wescott v. Allstate Ins.*, 397 A.2d 156, 169 (Me. 1979) ("expressio unius est exclusio alterius"); Scalia & Garner, Reading Law: The Interpretation of Legal Texts 107 (2012) ("The expression of one thing implies the exclusion of others.").

Finally, Acadia and its amicus attempt to argue that the District Court's interpretation of the plain text of MEPL would produce absurd results because it would prevent employers from paying men and women differently for "legitimate business reasons." App. Br. 11-12, 15-16; Amicus Brief of Maine State Chamber of Commerce (Amicus Br.) 6. But this is the typical argument of last resort that the Supreme Court has repeatedly called out as outside the scope of appropriate statutory interpretation:

> In the end, the employers are left to retreat beyond the statute's text, where they fault us for ignoring the legislature's purposes in enacting Title VII or certain expectations about its operation. They warn, too, about consequences that might follow a ruling for the employees. But none of these contentions about what the employers think the law was meant to do, or should do, allow us to ignore the law as it is.

*Bostock*, 140 S. Ct. at 1745; *see Whitney*, 895 A.2d at 315-16 ("If a legislative policy concern is valid, the appropriate body to address that concern is the Maine Legislature, it is not to seek amendment of the law by judicial action."); *see also*

Scalia & Garner, *supra* at 234 (explaining that courts may consider statutory text "absurd" only if "no reasonable person could approve" of its consequences).

Moreover, it is far from clear that their imagined horribles will actually follow if this Court upholds the plain meaning of MEPL. For example, the Maine State Chamber of Commerce speculates that, if applied as written, MEPL will prevent employers from considering new hires' levels of experience, training, education, and skills in setting their wages. Amicus Br. 9. But if a new hire's higher levels of skill and expertise manifest in their actual job, then no liability would arise under MEPL because that person would not be performing "comparable work" to their lower-paid opposite-sex colleague.

## B. MEPL's federal analogue does not require proof of discriminatory animus.

The District Court's plain reading of MEPL is reinforced by case law interpreting the analogous federal Equal Pay Act ("FEPA"), 29 U.S.C. § 206(d). *See City of Auburn*, 408 A.2d at 1261 (holding that when the Maine Legislature adopts provisions that generally track federal antidiscrimination statutes, the Maine Legislature intends "the courts to look to the federal case law to provide significant

guidance in the construction of our statute" (quoting *Me. Hum. Rts. Comm'n v. Local 1361*, 383 A.2d 369, 375 (Me. 1978))).[5] As relevant here, FEPA provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

MEPL and FEPA share the same textual structure and the same key statutory language: employers may not "discriminate" "between employees" in the same "establishment" "on the basis of sex" "by" paying lower wages to employees of the opposite sex for work that is comparable (under the Maine law) or equal (under the

---

[5] In *City of Auburn*, for example, the Maine Law Court interpreted the Maine Human Rights Act by looking to and adopting the prima facie case and burden-shifting framework established by federal courts for an analogous federal law, Title VII of the Civil Rights Act. 408 A.2d at 1261-62. The Law Court observed that "[t]he principal respect in which the Superior Court went astray was to overlook, or choose to ignore, the special methodology that the United States Supreme Court has developed for evaluating the evidence in employment discrimination cases." *Id*. at 1261.

federal law), unless an enumerated exception applies. 26 M.R.S. § 628; 29 U.S.C. § 206(d)(1). Because MEPL "generally track[s]" FEPA, case law interpreting FEPA "provide[s] significant guidance in the construction" of MEPL. *City of Auburn*, 408 A.2d at 1261 (cleaned up).

Decisions from the United States Supreme Court, this Court and every Circuit Court have held that under FEPA the plaintiff bears the initial burden to prove that their employer paid an employee of the opposite sex in the same establishment more for equal work, and the burden of proof then shifts to the employer to prove that the difference in pay is justified under one the law's enumerated exceptions. *See, e.g.*, *Corning Glass Works*, 417 U.S. at 195–96; *McMillan*, 140 F.3d at 298.[6] Federal courts have thus uniformly held that "in cases brought under the Equal Pay Act, the plaintiff need not show that the defendant was motivated by a discriminatory animus." *E.g.*, *McMillan*, 140 F.3d at 298.[7] The

---

[6] *See also Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999); *EEOC v. Del. Dept. of Health and Soc. Servs.*, 865 F.2d 1408, 1414 n.8 (3d Cir. 1989); *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018); *Siler-Khodr v. Univ. Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001); *Beck-Wilson v. Principi*, 441 F.3d 353, 360 (6th Cir. 2006); *Fallon v. State of Ill.*, 882 F.2d 1206, 1213 (7th Cir. 1989); *Bauer v. Curators of Univ. of Mo.*, 680 F.3d 1043, 1045 (8th Cir. 2012); *Rizo v. Yovino*, 950 F.3d 1217, 1223 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 189 (2020); *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1310–11 (10th Cir. 2006); *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992); *Thompson v. Sawyer*, 678 F.2d 257, 276 (D.C. Cir. 1982).

[7] States with similar equal pay laws also tend to follow the FEPA framework. *See* ECF 26 at 5-6 (Plaintiff-Appellee's Supplemental Authority in Support of Motion for Partial Summary Judgment, citing examples of other state equal pay laws that

burden-shifting framework universally adopted by federal courts construing FEPA naturally applies to MEPL as well, given that the two laws share the same textual structure and similar key requirements. *See City of Auburn*, 408 A.2d at 1261. Thus, under Maine law, an employer may violate MEPL regardless of whether it had a discriminatory motive, and plaintiffs seeking to enforce MEPL are not required to show discriminatory animus.

Of course, MEPL and FEPA are not identical: As the District Court correctly found, MEPL is more protective of employees than its federal counterpart in several respects. Add. 14 n.5. For example, MEPL requires that employees of

---

adopt the prima facie case and burden-shifting framework from FEPA and do not impose an intent requirement on the plaintiff).

The Chamber's critique of the District Court's citation to *Jancey v. School Committee of Everett*, 658 N.E.2d 162 (1995), is misplaced. Amicus Br. 4. First, the Massachusetts Supreme Court's refusal to follow the federal Equal Pay Act concerned the "comparable" versus "equal" work standards. *Id.* at 167. It is unremarkable that a state court would refuse to follow an otherwise analogous federal law in a specific way that the two laws differ. Second, the version of the Massachusetts equal pay statute recited by the Chamber is different from the version in effect when *Jancey* was decided, though both versions are "strict liability" statutes. *Compare Jancey*, 658 N.E.2d at 165-66 (quoting the version of the Massachusetts statute then in effect), *and id.* 170 (holding that the statute imposed strict liability), *with* Mass. Gen. Laws Ann. ch. 149, § 105A (the current version of the Massachusetts statute, cited by the Chamber), *and* Office of the Mass. Attorney General, "An Act to Establish Pay Equity: Overview and Frequently Asked Questions," at 2 (last updated March 1, 2018) (available at https://www.mass.gov/files/documents/2018/03/01/AGO%20Equal%20Pay%20Act%20Guidance.pdf) (explaining that "an intent to discriminate based on gender is not required to establish liability under the law."). Third, the Chamber's wish that MEPL, like the Massachusetts equal pay statute, had more affirmative defenses, Amicus Br. 4-5, does not make it so.

different sexes receive equal pay for "comparable work," 26 M.R.S. § 628, as opposed to the narrower "equal work" standard articulated in FEPA, 29 U.S.C. § 206(d)(1). And while FEPA allows employers to escape liability by establishing that a pay disparity resulted from "a differential based on any other factor other than sex," *id.* § 206(d)(1)(iv), MEPL contains no such exception. These differences show that the Maine legislature intended to impose a lower burden on plaintiffs under MEPL than under FEPA, not a higher one.

Acadia erroneously contends that the existence of any differences between FEPA and MEPL automatically negates the District Court's conclusion that FEPA's burden-shifting framework applies to MEPL. App. Br. 13-14. But Acadia's argument is directly undermined by the primary case it relies on, *Scamman v. Shaw's Supermarkets, Inc.*, 157 A.3d 223 (Me. 2017). In *Scamman*, the Law Court reiterated that Maine laws must be interpreted "against the background of prior federal antidiscrimination statutes." 157 A.3d at 232. In other words, Maine courts look to federal antidiscrimination laws to interpret Maine antidiscrimination laws when the text of the two laws are similar, and depart to the extent that the two laws differ in substance. *Id.* at 232-33.

The Law Court's reasoning in *Scamman* rejects Acadia's all-or-nothing approach to relying on federal analogues when interpreting Maine statutes. To determine the standards for analyzing claims of disparate-impact age

discrimination under the Maine Human Rights Act (MHRA), 5 M.R.S. § 4572(1)(A), the Law Court examined two potentially analogous federal statutes: Title VII, 42 U.S.C. §§ 2000e–2000e-17, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. Neither federal statute exactly mirrors the MHRA's prohibition on disparate-impact age discrimination. As the Law Court pointed out, Title VII does not even mention age as a protected characteristic. 157 A.3d at 228. And the ADEA contains an affirmative defense to disparate-impact age discrimination that does not appear in the text of the MHRA. *Id.* at 229-30.

The Law Court considered these differences and determined that the structure of the MHRA resembled Title VII closely enough that the business-necessity framework for disparate-impact claims under Title VII was binding in the MHRA age-discrimination context. *Id.* at 232. By contrast, the ADEA affirmative defense could not apply to an MHRA claim because it was not codified as a defense in the MHRA. *Id.* at 233 (holding that "neither the text of the [ADEA] affirmative defense nor the federal cases applying that text provides helpful guidance for interpreting" the MHRA).

Here, like the MHRA and Title VII provisions analyzed in *Scamman*, MEPL and FEPA are structurally similar. It follows that the burden-shifting framework under FEPA should also apply to MEPL claims. It is well settled that the plaintiff

need not show a discriminatory motive as part of her prima facie case under the FEPA framework. Indeed, Acadia has not cited, and Dr. Mundell has not found, a single case in any jurisdiction supporting its novel interpretation that statutory language like that of MEPL requires the plaintiff to affirmatively prove discriminatory animus or some additional discriminatory conduct over and above the discriminatorily low pay. When the District Court invited supplemental authority on the issue, A. 92-94, Acadia provided none. At oral argument, counsel for Defendant candidly conceded that there is no textual basis to support reading MEPL as less protective than FEPA. A. 122-23.

To the extent that Acadia concedes the structural similarity of the two statutes and asks the Court to read into MEPL an "any other factor other than sex" affirmative defense simply because it appears in FEPA, 29 U.S.C. § 206(d)(1)(iv), the Law Court's decision in *Scamman* forecloses this argument. Just as the MHRA does not contain an affirmative defense listed in the ADEA, *see Scamman*, 157 A.3d at 232, the text of MEPL does not allow an employer to avoid liability by proving that a pay disparity resulted from some factor other than sex. In this sense, MEPL "substantively differ[s]" from FEPA, and courts must interpret MEPL to give effect to that difference. *Id.* at 233. The absence of a "factor other than sex" defense under MEPL reinforces the conclusion that it is more protective of employees than FEPA and lends further support to District Court's holding that

MEPL does not require plaintiffs to show discriminatory intent to establish liability.[8]

## C. MEPL's legislative history bolsters its plain language.

While acknowledging that it was not necessary, given the clarity of MEPL's text, the District Court correctly concluded that the law's legislative history strengthened its interpretation of MEPL's plain language. Add. 13-14. MEPL predates FEPA, and in its original form, MEPL used an "equal work" standard and provided a catchall affirmative defense to employers when the "variation in salary or wage rates" was "based upon" any "other reasonable differentiation except difference in sex." P.L. 1949, ch. 262, § 40-A (effective Aug. 6, 1949); Addendum of Appellee/Plaintiff Clare E. Mundell ("Mundell Add.") 1.

In 1963, the United States Congress passed FEPA, including its current "equal work" standard and "factor other than sex" defense. Equal Pay Act of 1963, Pub. L. No. 88-38, § 3, 77 Stat. 56, 56-57. Two years later, in 1965, the Maine Legislature amended its corollary to the federal Equal Pay Act and replaced the phrase "equal work" with "comparable work" and struck the "other reasonable

---

[8] Thus, the argument pressed by Acadia and the Chamber that Dr. Mundell's wages were legitimately based on a "factor other than sex," market forces, is irrelevant to Dr. Mundell's MEPL claim. *See* App. Br. 4; Amicus Br. 7 n.3. Even under FEPA, which permits such arguments, courts have cautioned against overreliance on nebulous "market forces" to justify significant pay disparities. *Merillat v. Metal Spinners*, 470 F.3d 685, 697 n.6 (7th Cir. 2006).

differentiation except difference in sex" catchall defense. P.L. 1965, ch. 150 (effective Sept. 3, 1965); Mundell Add. 2. Since then, the Legislature has amended the Maine Equal Pay act five more times but has never reinstated the catchall defense. *See* P.L. 2019, ch. 35, § 3 (effective Sept. 19, 2019). The District Court correctly concluded that the Legislature's decision to strip—and never add back— its catchall defense "evinces a design to ensure that the state law protected pay equality regardless of the employer's non-discriminatory motive." Add. 14.[9]

### D. Acadia's policy arguments are irrelevant and unfounded.

Having struck out with the statutory text, supporting case law, and legislative history, Acadia resorts to policy arguments. But it goes without saying that courts cannot ignore the law as written to entertain roving policy arguments. *See Whitney*, 895 A.2d at 315 ("[L]egislative policy arguments are more appropriately left to the executive and the Legislature to resolve."). And Acadia's policy arguments are unpersuasive in any event. For example, Acadia claims that the District Court's interpretation of MEPL will undercut Maine's ability to attract and retain a skilled workforce, yet it cites no authority specifically supporting that proposition. And that is the opposite of what happened in this case. Acadia lost Dr.

---

[9] The District Court also noted that the Legislature's decision to change from an "equal work" to a "comparable work" standard after the federal law was passed "further indicat[es] an intent to ensure a more ambitious state law than its federal counterpart." Add. 14 n.5.

Mundell, a talented and highly skilled employee, because they illegally and

systematically underpaid her for more than two years. A. 19, 21, 31, 32. As it turns

out, pay discrimination is bad for business.[10] Acadia's speculation to the contrary

cannot win the day in a court of law.[11]

### E. Dr. Mundell has proven that Acadia violated MEPL.

Dr. Mundell has carried her burden of proof on each element of her MEPL

claim. As discussed above, based on the plain language of 26 M.R.S. § 628, a

---

[10] Acadia incorrectly states that the District Court's holding requires equal pay for all employees in similar or like "job classification(s)." App. Br. 18. In truth, the District Court held that MEPL requires equal pay for "comparable work," which is the key term that actually appears in 28 M.R.S. § 628. Add. 14-15. Thus, MEPL clearly does not require equal pay for employees in similar or like job classifications; instead, what matters is whether the employees "in the same establishment" perform "comparable work on jobs that have comparable requirements relating to skill, effort and responsibility." 26 M.R.S. § 628. Moreover, this case does not present occasion to evaluate the specific contours of the "comparable work" standard, because Acadia admitted that Dr. Mundell and her male counterparts performed comparable work "in a job that had comparable requirements relating to skill, effort and responsibility." A. 70.

[11] The Chamber of Commerce also grossly overstates the effect of the District Court's holding when it asserts that it will have "the net effect of holding employers strictly liable for sex-based discrimination in *any* instance where a lower paid employee happens to be the opposite sex of a higher paid employee, and the pay differential is not the result of seniority systems, merit increase systems, or shift differentials—regardless of the employer's intent." Amicus Br. 6; *see also id.* at 1. This framing completely omits the significant initial burden for MEPL plaintiffs to prove that they perform "comparable work on jobs that have comparable requirements relating to skill, effort and responsibility" to an opposite sex colleague "in the same establishment." 26 M.R.S. § 628.

plaintiff bringing a MEPL claim must show that (1) her employer; (2) paid her wages at a rate less than the rate paid to an employee of the opposite sex; (3) in the same establishment; (4) for comparable work on jobs with comparable requirements relating to skill, effort and responsibility. Here, it is undisputed that Dr. Mundell was an employee of Acadia. A. 68-69. Acadia paid her wages at a rate far less than her male pool psychologist counterparts: it paid Dr. Mundell at about half the rate of her male colleagues, just $50 per hour rather than $90-95 per hour. A. 69-70. Dr. Mundell and the male pool psychologists all worked at Acadia Hospital in Bangor. A. 69. They performed comparable work on jobs that had comparable requirements relating to skill, effort, and responsibility. A. 70.

Acadia has admitted that none of the affirmative defenses available to employers under MEPL apply. A. 70. The pay disparity was not based on an established seniority system, an established merit increase system, or a difference in shift or time of the day worked. A. 70.

In the District Court and again now, Acadia fights the inevitable and argues that MEPL somehow imposes a separate and additional burden on plaintiffs to prove discriminatory intent, even though that burden appears nowhere in the

statute, has been rejected by every court interpreting similar language in FEPA, and finds no support in the legislative history of MEPL or FEPA.[12]

## II. Dr. Mundell is Entitled to Her Unpaid Wages and Liquidated Damages Under the Penalties Provision of the Maine Wage Law.

The District Court correctly concluded that Dr. Mundell is entitled to treble damages under 26 M.R.S. § 626-A for Acadia's violation of MEPL.

### A. Both plain language and Law Court precedent support treble damages.

The remedies owed for MEPL violations are set forth in the "Wages and Medium of Payment" subchapter's "Penalties" provision, 26 M.R.S. § 626-A. The first paragraph of Section 626-A lists specific statutory provisions, and the second paragraph provides for unpaid wages and benefits, a reasonable rate of interest, cost of suit including a reasonable attorney's fee, and an additional amount equal to twice the amount of unpaid wages as liquidated damages. 26 M.R.S. § 626-A. The second paragraph of Section 626-A expressly makes employers liable for

---

[12] Acadia also misstates a key legal issue presented by this case when it frames the question as whether MEPL "imposes strict liability on employers who pay *comparably qualified employees* of the opposite sex different wages." App. Br. 10 (emphasis added). MEPL concerns itself with employees who perform "comparable work" in their actual, on-the-ground jobs. 26 M.R.S. § 628. It says nothing about comparable qualifications and for good reason; irrelevant qualifications, which have nothing to do with the actual requirements of the job, could be an easy excuse for paying men much more than women for performing comparable work.

treble damages penalties on unpaid wages "in any action brought to recover unpaid wages or health benefits under this subchapter."[13] That subchapter includes MEPL, 26 M.R.S. § 628.

The Maine Law Court has squarely held that the damages listed in the second paragraph of 26 M.R.S. § 626-A (which includes treble damages) are available for violations of the statutory provisions named in the first paragraph (which includes MEPL, 26 M.R.S. § 628), *Cooper v. Springfield Terminal Ry. Co.*, 635 A.2d 952, 955 (Me. 1993), so long as unpaid wages are at stake in the claim, *In re Wage Payment Litig.*, 759 A.2d 217, 223-24 (Me. 2000). As clarified in its *Wage Payment Litigation* decision, unpaid wages are at stake "when the employer has failed to pay a current employee **in full**" by the "next regularly scheduled payday. *Id*. at 223 (emphasis added). *See also Giguere v. Port Res., Inc.*, 927 F.3d 43, 51 (1st Cir. 2019) ("Maine Wages [and Medium of Payment] Act violations entitle a plaintiff to unpaid wages plus 'an additional amount equal to twice the amount of unpaid wages as liquidated damages.' " (quoting 26 M.R.S. § 626-A)).

Under Maine law, Dr. Mundell clearly has a claim for unpaid wages—namely, the "full" wages equal to the wages Acadia paid her male colleagues but withheld from her in violation of MEPL. Thus, consistent with how this Court

---

[13] "This subchapter" refers to Title 26, Chapter 8, Subchapter 2, "Wages and Medium of Payment," which encompasses 26 M.R.S. §§ 621-639.

correctly analyzed Maine law over 30 years ago, Dr. Mundell's meritorious claim for the violation of MEPL entitles her to "liquidated damages and attorney's fees as provided by § 626-A." *Beckwith v. United Parcel Serv., Inc.*, 889 F.2d 344, 350-51 (1st Cir. 1989) ("For example, an employer who violates the equal pay requirements in 26 M.R.S. § 628 could be required to pay the affected employees liquidated damages and attorney's fees as provided by § 626-A.").

In the face of all this contrary precedent, Acadia makes the implausible argument that MEPL does not "specifically require the employer to pay wages." App. Br. 21. Acadia provides no textual basis for this unprecedented interpretation of MEPL.[14] And it contravenes the text of MEPL, which plainly requires employers to pay women at the same rate as men performing comparable work (and vice versa). By requiring that employers pay equal wages, MEPL necessarily

---

[14] Acadia does cite a statutory provision and case law interpreting damage provisions of claims not at issue here, specifically Title VII of the Civil Rights Act of 1964, the Maine Human Rights Act, and the Maine Whistleblowers' Protection Act. But Acadia's argument that the Court should look to the damage provisions of those statutes to interpret Sections 628 and 626-A, simply because those statutes mention the word "discriminate" somewhere in their text, is unconvincing. Acadia also incorrectly asserts that an "employee is not entitled to pursue a claim for failure to pay wages in lieu of (or in addition to) pursuing a claim for discrimination." App. Br. 22. Of course they are. And in fact, that is exactly what Dr. Mundell did here: she brought a MEPL claim in addition to claims under Title VII and the Maine Human Rights Act. At no point did Acadia move to dismiss any of these claims as mutually exclusive, because they are not.

requires employers to pay wages. So the penalties available for MEPL violations must be those listed in the second paragraph of Section 626-A.[15]

Finally, Acadia argues that Dr. Mundell does not have a claim for unpaid wages because Acadia paid Dr. Mundell "what it had agreed to pay her throughout her tenure." App. Br. 22. The District Court dismissed this argument swiftly and cogently, finding that the Law Court has already resolved that failing to pay an employee "in full" constitutes a claim for unpaid wages. Add. 20. Acadia's position, for which it cites no legal authority, would in fact eliminate damages for every equal pay claim—the whole point of equal pay claims is that what the employer agreed to pay the female employee was discriminatorily low and that she was entitled to more.[16]

---

[15] MEPL does not have its own penalty provision, so there is no argument that MEPL might displace section 626-A's statutory penalties provision. *See* 26 M.R.S. § 628. S*ee also Beckwith v. United Parcel Serv., Inc.*, 889 F.2d 344, 350-51 (1st Cir. 1989) (considering, but ultimately rejecting, the argument that section 626-A penalties are displaced by more specific remedies listed under section 629); *Noll v. Flowers Foods, Inc.*, No. 1:15-cv-00493-LEW, 2021 WL 904859, at *5 (D. Me. Mar. 9, 2021) (same).

[16] Acadia's argument would also eliminate a large swath of wage-and-hour claims altogether. For example, an employer who failed to pay the minimum wage could defend the claim by arguing that they simply paid their employee what they had agreed to pay them all along.

## B. The District Court's decision is entirely consistent with the purpose of MEPL.

As the District Court explained, "[t]he purpose of section 626-A's treble damages provision is to provide effective deterrence against violations of Maine's wage laws." Add. 21 (citing L.D. 991, Statement of Fact (107th Legis. 1975)). This deterrence is particularly important in equal pay claims, when employees are often in the dark about what they make compared to their colleagues. Without the threat of treble damages, "employers would be incentivized not to investigate their compensation practices for MEPL compliance, knowing they could simply pay back the difference if they were ever caught." Add. 21.

Additionally, as this Court has emphasized, "[t]he default rule of construction under Maine law for ambiguous provisions in the state's wage and hour laws is that they 'should be liberally construed to further the beneficent purposes for which they are enacted.'" *O'Connor v. Oakhurst Dairy*, 851 F.3d 69, 79 (1st Cir. 2017) (quoting *Dir. of Bureau of Labor Standards v. Cormier*, 527 A.2d 1297, 1300 (Me. 1987)); *see also Giguere*, 927 F.3d at 50 (noting "the interpretive rule that ambiguities in the exceptions to the FLSA's general rules should be resolved in favor of employees" and a "parallel" rule under Maine law).

Acadia's reference to the MDOL's procedures for equal pay complaints made to the Bureau of Labor Standards do not support a different result. These are rules governing a parallel administrative procedure that Dr. Mundell did not

pursue. Nor does MEPL's requirement for annual reporting by the MDOL

somehow override the plain language of Section 626-A, case law interpreting it, or

its stated legislative purpose to deter violations.

### C. There is nothing absurd about paying men and women equally for comparable work.

Acadia's argument that treble damages for MEPL violations would be

"financially devastating" and lead to "absurd and unreasonable results" rests on a

basic misunderstanding of the statute. App. Br. 25. Employers are not liable for

liquidated damages for every pay inconsistency among employees of the opposite

sex. Instead, employers are liable only if an employee can clear the substantial

hurdle of proving that she was paid less "for comparable work on jobs that have

comparable requirements relating to skill, effort and responsibility" than a male

employee "in the same establishment," and the employer cannot establish that any

affirmative defense applies. 26 M.R.S. § 628.

Moreover, the Law Court and this Court have repeatedly held that treble

damages are the remedy for wage violations under the Maine Wages and Medium

of Payment subchapter, of which MEPL is a part.[17] In doing so, the courts have

---

[17] *See, e.g., Giguere*, 927 F.3d at 51 (holding that employees are entitled to treble damages for unpaid sleep time in violation of section 629); *Bisbing v. Me. Med. Ctr.*, 820 A.2d 582, 584-85 (analyzing the "plain language" of section 626 and finding workers entitled to treble damages based on employer's failure to pay accrued vacation pay upon termination despite the likely "harsh" effect on the employer); *Cooper*, 635 A.2d at 955 (holding that workers were entitled to treble

emphasized the Maine wage law's "remedial" and "broadly protective purpose," and have rejected claims that these treble damages are punitive. *Giguere*, 927 F.3d at 51 (quoting *Bisbing v. Me. Med. Ctr.*, 820 A.2d 582, 584-85 (Me. 2003)). If treble damages for each of these violations of Maine's wage laws are reasonable and serve the law's "broadly protective purpose," then it is difficult to understand why treble damages for violations of Maine's equal pay provision would be "absurd."

Further, as the District Court correctly noted, it is the employer, and not the employee, who is in a position to identify and eliminate pay disparities among employees. Dr. Mundell was unaware for years that she was being paid almost half as much as her fellow male pool psychologists. Add. 21. Acadia's claim not to have been aware of the pay disparity "only highlights why the Legislature chose to authorize treble damages under section 626-A and to apply that provision to MEPL." Add. 21. The Legislature's decision to impose strong remedies reflects the reality of equal pay cases: that employers have access to pay information, while employees often do not. Indeed, this informational deficit is likely one of the reasons this is the first and only MEPL case to reach a court decision in the law's 73-year history.

---

damages based on employer's failure to pay them for training time in violation of section 629).

Acadia also takes issue with the Maine Legislature's decision to single out equal pay on the basis of sex, rather than equal pay on the basis of other protected characteristics, such as race. App. Br. 26. This is a legitimate policy issue that could be pursued through the legislative process. But it does not give the courts license to overrule the Maine Legislature's decision to prioritize unequal pay on the basis of sex in its Wages and Medium of Payment subchapter.[18]

### III. Certification is Inappropriate Because it is Reasonably Clear That the Law Court Would Reject Acadia's Novel Interpretation of Maine's Equal Pay Law.

The District Court faithfully applied this Court's precedents in rejecting Acadia's eleventh-hour request for certification of the legal issue whether MEPL requires the plaintiff to show that the defendant was motivated by discriminatory animus. Judge Walker interpreted MEPL based on the Law Court's statutory interpretation rules, which focus on the plain meaning of the statute and federal

---

[18] MEPL does, of course, already apply to women of all races. Studies show that while on average, women in the United States are paid only 82 cents for every dollar paid to their male counterparts, this wage gap is even wider for women of color. For example, Black women are typically paid an average of 63 cents, Native American women 60 cents, and Latina women 55 cents for every dollar paid to white, non-Hispanic men. *See* Jasmine Tucker, The Wage Gap Has Robbed Women of Their Ability to Weather COVID-19 (Mar. 2021), https://nwlc.org/wp-content/uploads/2021/03/EPD-2021-v1.pdf. While the law may be due for expansion, an underpaid Black, Native American, or Latina woman, for example, would have a cognizable claim under MEPL as it now stands. And the Maine Legislature may have made a reasonable political judgment to focus first on this particular type of wage inequality .

case law if Maine's statutory language is substantially identical to a federal statute. And he correctly determined that MEPL was "nearly identical in both text and structure" to the Federal Equal Pay Act (FEPA), which provides that "employers may not 'discriminate . . . on the basis of sex by paying [unequal wages] for equal work.' " Add. 8-9 (citing FEPA).

Acadia does not attempt to contest the District Court's finding that this Court and numerous other courts have interpreted FEPA's statutory language to impose strict liability on the employer. Nor does Acadia dispute Judge Walker's understanding that the Law Court routinely follows cases interpreting federal statutes when interpreting similar provisions in Maine statutes. In short, the District Court's denial of certification clearly comports with this Court's rule that certification is unnecessary, even to resolve "a difficult state law question on which the highest court of the state has not spoken directly," if the sources that would inform the state courts' analysis "generally and persuasively point[] in one direction." *Ken's Foods, Inc. v. Steadfast Ins. Co.*, 36 F.4th 37, 41 & n.3 (1st Cir. 2022).

Besides, Acadia did not file its request for certification until well over three months after it filed its opposition to Dr. Mundell's motion for partial summary judgment on her MEPL claim; indeed, it waited to do so until after oral argument,

when it could see the writing on the wall that an unfavorable decision was imminent. A. 3-4. This Court strongly disfavors such dilatory and tactical requests for certification. *See, e.g.*, *Ken's Foods*, 36 F.4th at 45 (noting that the party seeking certification should have asked to do so "sooner").[19]

For the reasons explained in Sections I and II above and in Dr. Mundell's June 27, 2022, Opposition to Acadia's Motion to Certify, this Court should not certify Acadia's question to the Law Court. It is reasonably clear that the Law Court would reject Acadia's attempt to impose a separate and additional burden to prove discriminatory intent or conduct on MEPL plaintiffs, when that burden appears nowhere in the statute and has been rejected by every court interpreting similar language in FEPA and state equal pay laws. The Law Court would likewise reject Acadia's suggestion that the statutory liquidated damages generally available for other unpaid wage claims are somehow unavailable for unpaid wage claims under MEPL.

But, if this Court concludes that the course the Law Court would take is not reasonably clear and decides to certify a question to the Law Court, Dr. Mundell respectfully opposes Acadia's framing of the certified question and proposes the following two-part question instead:

---

[19] For additional authorities and explanation of the certification standard, *see* Dr. Mundell's June 27, 2022, Opposition to Acadia's Motion to Certify, at 5-7, incorporated here by reference.

1.) Under *Maine Human Rights Commission v. City of Auburn*, 408 A.2d 1253, 1261 (Me. 1979) and related precedents, does the prima facie case and burden-shifting framework from the Federal Equal Pay Act, 29 U.S.C. § 206(d)(1), apply to the Maine Equal Pay Law, 26 M.R.S. § 628, when both laws instruct that employers may not "discriminate" "between employees" "on the basis of sex" "by" paying lower wages to employees of the opposite sex for work that is comparable (under Maine law) or equal (under federal law), unless an enumerated defense applies; or does the Maine Equal Pay Law impose a separate burden on the plaintiff to prove additional discriminatory intent or conduct by the defendant?

2.) Under *Cooper v. Springfield Terminal Railway Company*, 635 A.2d 952, 955 (Me. 1993), are the remedies listed in the second paragraph of 26 M.R.S. § 626-A recoverable for violations of 26 M.R.S. § 628 resulting in unpaid wages?

## Conclusion

Dr. Mundell worked for Acadia for nearly two and a half years providing psychological services to her patients, just like Acadia's male pool psychologists. Unbeknownst to her, Acadia paid her about half as much as her male counterparts. This inequality is precisely what the Maine Equal Pay Law was enacted to prevent. As the District Court found, because the undisputed facts show that Acadia paid

Plaintiff less than employees of the opposite sex in the same establishment for comparable work and none of the statutory defenses apply, Acadia owes Dr. Mundell the amount of her unpaid wages—the discrepancy between what she and her male colleagues were paid—plus twice that amount as liquidated damages and her statutory attorney's fees. And this Court should reject Acadia's effort to "fall back to the last line of defense for all failing statutory interpretation arguments: naked policy appeals." *Bostock*, 140 S. Ct. at 1753.

Thus, Dr. Mundell respectfully requests that this Court deny Acadia's request for certification to the Maine Law Court, affirm the District Court's order granting summary judgment on her Maine Equal Pay Law claim, and remand this matter under this Court's Local Rule 39.1(b) to the District Court for a determination of Plaintiff's application for attorney's fees, other expenses, and costs.[20]

Date: September 21, 2022

/s/ Valerie Z. Wicks
Valerie Z. Wicks
First Circuit Bar No. 1203877
Borealis Law, PLLC
97 India Street
Portland, ME 04101
(207) 613-6580
val@maineworkerjustice.com

---

[20] Under Local Rules 54.2 and 54.3 of the Local Rules of the U.S. District Court for the District of Maine, Plaintiff will file a timely application for statutory attorney's fees, case expenses, and costs.

/s/ David G. Webbert
David G. Webbert
First Circuit Bar No. 50820
Johnson & Webbert, LLP
160 Capitol St., Suite 3
Augusta, ME 04332-0079
(207) 623-5110
dwebbert@work.law

*Attorneys for Appellee Dr. Mundell*

**Certificate of Compliance**

1. This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 10,267 words, excluding the parts of the brief exempt under Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type of style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using serifs in Times New Roman 14-point font.

Dated: September 21, 2022        /s/ David G. Webbert

David G. Webbert
First Circuit Bar No. 50820
Johnson & Webbert, LLP
160 Capitol St., Suite 3
Augusta, ME 04332-0079
(207) 623-5110

**Certificate of Service**

I hereby certify that on September 21, 2022, I electronically filed the

foregoing Brief of Appellee Clare E. Mundell with the United States Court of

Appeals for the First Circuit by using the CM/ECF system. I certify that the

following parties or their counsel of record are registered as ECF Filers and that

they will be served by the CM/ECF System:

> Valerie Z. Wicks
> Borealis Law, PLLC
> 97 India Street
> Portland, ME 04101
> (207) 613-6580
> val@maineworkerjustice.com
>
> Melissa A. Hewey
> Kasia S. Park
> Drummond Woodsum
> 84 Marginal Way, Suite 600
> Portland, ME 04101-2480
> (207) 772-1941
> mhewey@dwmlaw.com
> kpark@dwmlaw.com

Dated: September 21, 2022          /s/ David G. Webbert
                                   David G. Webbert
                                   First Circuit Bar No. 50820
                                   Johnson & Webbert, LLP
                                   160 Capitol St., Suite 3
                                   Augusta, ME 04332-0079
                                   (207) 623-5110

# Addendum
## Table of Contents

Maine P.L. 1949, ch. 262, § 40-A (effective Aug. 6, 1949)......................Add.1

Maine P.L. 1965, ch. 150 (effective Sept. 3, 1965) ..................................Add.2

# Chapter 262

### AN ACT to Provide for Equal Pay for Equal Work.

*Be it enacted by the People of the State of Maine,* as follows:

R. S., c. 25, § 40-A, additional.    Chapter 25 of the revised statutes is hereby amended by adding thereto a new section, to be numbered 40-A, to read as follows:

'Sec. 40-A.   Wage rates for equal work; penalty; exception.   No employer shall employ any female in any occupation within this state for salary or wage rates less than the salary or wage rates paid by that employer to male employees for equal work.   However, nothing in this section shall prohibit a variation in salary or wage rates based upon a difference in seniority, experience, training, skill, ability, or difference in duties or services performed, either regularly or occasionally, or difference in the shift or time of the day worked, or difference in availability for other operation, or other reasonable differentiation except difference in sex.   Any individual, association or corporation who violates the provisions of this section shall be punished by a fine of not more than $200.'

Effective August 6, 1949

## Chapter 150

AN ACT Relating to Equal Pay for Men and Women Employees.

*Be it enacted by the People of the State of Maine,* as follows:

R. S., T. 26, § 628, amended.  The first 2 sentences of section 628 of Title 26 of the Revised Statutes are repealed and the following enacted in place thereof:

'No employer shall discriminate between employees in the same establishment on the basis of sex, by paying wages to any employee in any occupation in this State at a rate less than the rate at which he pays any employee of the opposite sex for comparable work on jobs which have comparable requirements relating to skill, effort and responsibility.  Differentials which are paid pursuant to established seniority systems or merit increase systems, or difference in the shift or time of the day worked, which do not discriminate on the basis of sex, are not within this prohibition.  No employer may discharge or discriminate against any employee by reason of any action taken by such employee to invoke or assist in any manner the enforcement of this section.'

Effective September 3, 1965

Add. 2