# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT
_____

No. 22-1394

## CLARE E. MUNDELL,

### Plaintiff – Appellee,

### v.

## ACADIA HOSPITAL CORP.,

### Defendant – Appellant,

### EASTERN MAINE HEALTHCARE SYSTEMS,

### Defendant.
_____

### On Appeal from the United States District Court, District of Maine

---

## REPY BRIEF OF APPELLANT ACADIA HOSPITAL CORP.

---

Melissa A. Hewey, First Circuit Bar No. 40774
Kasia S. Park, First Circuit Bar No. 1173974
*Attorneys for Acadia Hospital Corp.*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101-2480
Tel: (207) 772-1941
mhewey@dwmlaw.com
kpark@dwmlaw.com

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT
_____

No. 22-1394

## CLARE E. MUNDELL,

**Plaintiff – Appellee,**

v.

## ACADIA HOSPITAL CORP.,

**Defendant – Appellant,**

## EASTERN MAINE HEALTHCARE SYSTEMS,

**Defendant.**
_____

**On Appeal from the United States District Court, District of Maine**

## REPY BRIEF OF APPELLANT ACADIA HOSPITAL CORP.

Melissa A. Hewey, First Circuit Bar No. 40774
Kasia S. Park, First Circuit Bar No. 1173974
*Attorneys for Acadia Hospital Corp.*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101-2480
Tel: (207) 772-1941
mhewey@dwmlaw.com
kpark@dwmlaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................i

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ..............................................................................1

ARGUMENT .....................................................................................2

    I.    The MEPL Prohibits Discrimination on the Basis of Sex .......................2

    II.   Even if Acadia did Violate the MEPL, Plaintiff is not Entitled
        to Treble Damages and Attorneys' Fees...................................................6

    III.  Certification is Appropriate in this Case ...............................................11

CONCLUSION..................................................................................15

CERTIFICATE OF COMPLIANCE......................................................16

CERTIFICATE OF SERVICE .............................................................17

# TABLE OF AUTHORITIES

## CASES

*Bankr. Est. of Everest v. Bank of Am., N.A.*, 2015 ME 19, 111 A.3d 655 ................................................................................................14

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) ......................................4

*Burke v. Port Resort Realty Corp.,* 1999 ME 138, 737 A.2d 1055 .........................7

*Cooper v. Springfield Terminal Railway Co.*, 635 A.2d 952 (Me. 1993) ..................................................................................................7

*Grant v. City of Saco*, 436 A.2d 403 (Me. 1981).......................................7

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).........................3, 4, 5

*Ken's Foods, Inc. v. Steadfast Ins. Co.*, 36 F.4th 37 (1st Cir. 2022) ................11, 12

*Lehman Bros. v. Schein*, 416 U.S. 386 (1974)...................................14, 15

*Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico,* 554 F.3d 164 (1st Cir. 2009)..........................................10

*Penobscot Nation v. Frey*, 3 F.4th 484 (1st Cir. 2021)..............................3

*Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001) ...........................9

*Portland Pipe Line Corp. v. City of S. Portland*, 947 F.3d 11 (1st Cir. 2020) .................................................................................13

*Reagan v. Racal Mortg., Inc.*, 1998 ME 188, 715 A.2d 925 ..................................13

*Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) ...........................3

*Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41, 157 A.3d 223 ....................14

*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)...........................14

## STATUTES

42 U.S.C. § 2000e-2(k) ..................................................................5

42 U.S.C. § 12112(a) ....................................................................5

42 U.S.C. § 12112(b) ...................................................................5, 6

26 M.R.S. § 621-A(i) ..................................................................7, 8

26 M.R.S. § 626 ........................................................................7, 8

26 M.R.S. § 626-A .....................................................................6, 7

26 M.R.S. § 628 ........................................................................2, 8

26 M.R.S. § 629 ......................................................................7, 8, 9

## SECONDARY MATERIALS

*Collins Online English Dictionary,*
https://www.collinsdictionary.com/dictionary/english-thesaurus/on-
the-basis-of (last visited Oct. 10, 2022) ...................................................3

*Merriam-Webster Online Dictionary,* https://www.merriam-
webster.com/dictionary/on%20the%20basis%20of#:~:text=Definition
%20of%20on%20the%20basis,their%20grades%20and%20test%20sc
ores (last visited Oct. 10, 2022) ..........................................................3

## INTRODUCTION

The briefs of Plaintiff-Appellant Claire Mundell and Amici Curiae American Civil Liberties Union, American Civil Liberties Union of Maine and National Women's Law Center (collectively the "ACLU Amici") display a fundamental misunderstanding of the position of Appellant Acadia Hospital Corp. ("Acadia") in this case. Contrary to the characterizations of both Plaintiff and the ACLU Amici, Acadia does not advocate for "unrestricted" flexibility, ACLU Amici Br. at 21, nor does it ask this Court to "disregard the plain meaning of the statutory test," Appellee Br. at 9. Rather, Acadia contends only that for an employer to violate a statute that prohibits it from discriminating against its employees on the basis of sex, it must do just that -- discriminate against its employees on the basis of sex. Thus, where a pay differential is based on a legitimate nondiscriminatory reason other than sex, it is not a violation of the statute.

Indeed, the ACLU Amici's brief, which discusses in some detail the negative effect that unequal pay has on women, and particularly on women of color, actually supports the construction of the MEPL advanced by both Acadia and the Amicus Curiae Chamber of Commerce. The plain language of the MEPL is sex blind – in other words it applies as much to situations where women are paid more than men as it does to situations where men are paid more than women. Thus, an employer intent on diversifying its workplace by recruiting, for example,

a woman of color, would be prohibited from offering qualified candidates any extra incentives under the construction of the MEPL urged by Plaintiff and the ACLU Amici.

Much of Plaintiff's argument in this case is based on a discussion of federal law and, in particular, the federal Equal Pay Act. However, resolution of this case does not depend on the Equal Pay Act because, as all parties agree, the language of the Equal Pay Act differs significantly from the MEPL. The resolution of this case is dependent entirely on construing the MEPL, a statute that is unique to Maine, and about which the Maine Law Court has yet to speak.

## ARGUMENT

## I.  THE MEPL PROHIBITS DISCRIMINATION ON THE BASIS OF SEX

Plaintiff contends that the plain language of the statute can support only her interpretation of the MEPL, which is that the MEPL imposes liability on employers who pay different wages to employees of different sexes, regardless of whether sex played any role in the employer's wage decision. Appellee Br. at 11-12. In making this argument, Plaintiff, like the District Court, deletes the phrase "discriminate . . . on the basis of sex" from the statute. *See* 26 M.R.S. § 628. This impermissibly rewrites Section 628 and ignores the legislative intent to prohibit discrimination in wages on the basis of sex.

It is a fundamental rule of statutory construction that courts first look to the ordinary meaning of words. *See Gross v. FBL Fin. Servs, Inc.*, 557 U.S. 167, 175, 129 S. Ct. 2343, 2350 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."). To that end, courts have frequently found dictionaries to be "useful aids in determining a word's ordinary meaning." *Penobscot Nation v. Frey*, 3 F.4th 484, 491 (1st Cir. 2021), *cert. denied sub nom. United States v. Frey*, 212 L. Ed. 2d 578, 142 S. Ct. 1668 (2022), *and cert. denied*, 212 L. Ed. 2d 578, 142 S. Ct. 1669 (2022) (construing undefined term in statute in accordance with its ordinary meaning).

There are no defined terms in the MEPL. Turning to the ordinary meaning, the phrase "on the basis" means "based on" or "because of." *See Merriam-Webster Online Dictionary*, [https://www.merriam-webster.com/dictionary/on%20the%20basis%20of#:~:text=Definition%20of%20on%20the%20basis,their%20grades%20and%20test%20scores](https://www.merriam-webster.com/dictionary/on%20the%20basis%20of#:~:text=Definition%20of%20on%20the%20basis,their%20grades%20and%20test%20scores) (last visited Oct. 10, 2022); *Collins Online English Dictionary*, [https://www.collinsdictionary.com/dictionary/english-thesaurus/on-the-basis-of](https://www.collinsdictionary.com/dictionary/english-thesaurus/on-the-basis-of) (last visited Oct. 10, 2022) (defining "on the basis of" as "in the sense of based on" listing "based on," "because of," and "by reason of" as synonyms); *see also Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 63–64, and n. 14, 127 S. Ct. 2201, 167

L.Ed.2d 1045 (2007) (observing that the statutory phrase, "based on," has the same meaning as the phrase, "because of."). To establish an unequal pay claim under the plain language of the MEPL, therefore, a plaintiff must prove that the employer paid unequal wages *because of* the employee's sex. This plain reading of the statute demonstrates a need to show causation. *See Gross*, 557 U.S. at 176-77. Plaintiff's recitation of the elements of a successful MEPL claim eliminates any causation requirement and effectively deletes the phrase "on the basis of sex" from the statute. Appellee Br. at 12.

On this point, Plaintiff's reference to the United States Supreme Court's decision in *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731 (2020) is inapposite. As Plaintiff correctly observes, the *Bostock* court defined the term "discriminate" to mean treating a person "worse than others similarly situated." Appellee Br. at 23 (quoting *Bostock*, 140 S. Ct. at 1740.). Plaintiff, however, advocates that this Court should ignore the plain language in the MEPL requiring discrimination in wages on the basis of sex, and instead find an employer liable whenever a plaintiff can establish a difference in wages between employees of different sexes, regardless of whether or not that inequity was based on sex. The *Bostock* court did not go that far. *Bostock* reemphasized that the proscribed conduct – whether it be failing or refusing to hire, discharging or otherwise discriminating against – still must be because of sex. *See Bostock*, 140 S. Ct. at 1740.

4

Plaintiff's reliance on the text of the disparate impact section of Title VII to argue otherwise is also unconvincing. The statutory language of 42 U.S.C. § 2000e-2(k) provides a specific framework defining the burden of proof in disparate impact cases. That subsection explicitly distinguishes between disparate impact cases and those based on intentional discrimination. *See* 42 U.S.C. § 2000e-2(k)(2) ("A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter."). It is the entire statutory scheme describing the burden of proof, not the isolated language "on the basis," that dispels the intent requirement in disparate impact cases. Plaintiff's reliance on language in a different statute and in a different context falls flat. *See Gross*, 557 U.S. at 174–75 ("[W]hen conducting statutory interpretation, we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'") (citations omitted).

Plaintiff's reliance on the Americans with Disabilities Act ("ADA") is similarly misplaced. The ADA first provides the general rule that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring . . . ." 42 U.S.C. § 12112(a). However, unlike the MEPL, the ADA then goes on to define the term "discriminate against a qualified individual on the basis of disability," *id.* §

12112(b), which enumerates seven ways an employer violates the general rule. It is the statutory scheme of the ADA and not the single phrase "on the basis of" that provides the framework for establishing disability discrimination claims.

Plaintiff's attempts to broaden the scope of the MEPL and delete the phrase discriminate on the basis of sex from the statute should be rejected. The plain language of the MEPL does not support her reading. If the Maine Legislature had intended for employers to be liable in damages for every instance where employees of different sexes were paid different wages regardless of any discrimination on the basis of sex, then it would have explicitly said so in the statute.

## II. EVEN IF ACADIA DID VIOLATE THE MEPL, PLAINTIFF IS NOT ENTITLED TO TREBLE DAMAGES AND ATTORNEYS' FEES

Plaintiff begins her argument that she is entitled to treble damages and attorneys' fees under 26 M.R.S. § 626-A by suggesting – wrongly – that the treble damages and fees provided for in the second paragraph of Section 626-A are available for violations of all of the statutory provisions listed in the first paragraph. *See* Appellee Br. at 29 ("The first paragraph of Section 626-A lists specific statutory provisions, and the second paragraph provides for unpaid wages and benefits, a reasonable rate of interest, cost of suit including a reasonable attorney's fee, and an additional amount of twice the amount of unpaid wages as liquidated damages."). In fact, the first paragraph of Section 626-A provides only

for "a forfeiture of not less than $100 nor more than $500 for each violation" of the listed sections of Title 26 of the Maine Revised Statutes.

The remedies set forth in the second paragraph of Section 626-A do not specifically apply, nor are they specifically limited to those statutory sections listed in the first paragraph. Instead, they are limited to claims for unpaid wages and benefits. This is clear from a textual analysis of the statute, which repeatedly references unpaid wages and health benefits (*e.g.* "[a]ny employer is liable to the employee or employees for the amount of unpaid wages and health benefits;" "[r]emedies for unpaid wages do not become available to the employee except as follows;" "[t]he action for unpaid wages or health benefits may be brought by either the affected employee or employees or by the Department of Labor.").

It has also been established by decisions of the Maine Law Court. *See Grant v. City of Saco*, 436 A.2d 403, 404–405 (Me. 1981) (Section 626-A applies to claim for violation of section 621 for failure to timely pay wages due); *Burke v. Port Resort Realty Corp.,* 1999 ME 138, 737 A.2d 1055 (affirming judgment for treble damages and fees on claim for commissions under Section 626); *Cooper v. Springfield Terminal Railway Co.*, 635 A.2d 952 (Me. 1993) (a claim under Section 629 is subject to the liquidated damage provision of Section 626-A).

All of these cases have two characteristics in common: (1) they involve statutory provisions that affirmatively require an employee to pay wages; and (2)

the amount required to be paid (an amount previously agreed upon by employee and employer) under those provisions is capable of being calculated without dispute.  A MEPL claim has neither of these characteristics.  First, the MEPL does not include an affirmative obligation to pay wages but rather prohibits discrimination.  *Compare* Sections 621-A (1) ("[e]very employer must pay in full all wages earned by each employer"), Section 626 ("[a]n employee leaving employment must be paid in full"), Section 629 ("no [employer] shall require or permit any person as a condition of securing or retaining employment to work without monetary compensation") *with* Section 628 ("an employer may not discriminate between employees in the same establishment on the basis of sex").  Second, whereas claims for wages paid at a rate already agreed to by the employer under Sections 621-A, 626 and 629 are all for a sum certain, the amount due a successful plaintiff in a MEPL claim often is not.  Thus, in this case, although the record established that one of the male psychologists was paid $95/hour and the other was paid $90/hour, (App. 69), the District Court was unable to calculate the amount due Plaintiff without further proceedings, *see* (Add. 22), and it was not until the parties entered into a stipulation in which Plaintiff agreed to be paid with reference to the salary of the male who was paid less, that judgment could be entered,  (App. 5-6; Add. 25).

In her complaint, Plaintiff characterized her claim under the MEPL as being one for "damages, including but not limited to unpaid wages." (App. 24). In her argument to this Court, however, Plaintiff seeks to back away from that characterization, asserting that her claim is not for damages but rather just for unpaid wages. She argues that if Acadia had not (allegedly) violated the MEPL, she would have been paid more wages, and that her claim is thus for unpaid wages. But if this argument were correct, then virtually every claim by an employee against their employer would be a claim for unpaid wages subject to the treble damage and attorneys' fees provision in Section 626, which is something no one here contends.

Indeed, if a hypothetical employer had not deducted payment of a debt of its employee from that employee's wages in violation of Section 629, that employee would have received more in wages but for the statutory violation; yet, the employee's remedy would be limited to the amount withheld. 26 M.R.S. § 629. Or if another hypothetical employer had not refused to promote a candidate based on the candidate's race, that candidate would have received more wages. However, it is well settled that the employee's claim in these hypothetical scenarios would be for damages arising as a result of the discrimination, not a claim for unpaid wages. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 847–48, 121 S. Ct. 1946, 1949, 150 L. Ed. 2d 62 (2001) (describing damages

available to plaintiffs alleging employment discrimination); *see also Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico,* 554 F.3d 164, 174–75 (1st Cir. 2009) (discussing damages in employment discrimination context under federal and Puerto Rican law).

In short, Plaintiff's position with respect to the penalty provision is really just an extension of her argument about the statute in general and, in the end, the two arguments are inextricably tied together.  Stripped to its essence, Plaintiff's argument appears to be that, despite the statute's explicit provision that an employer may not "discriminate," the MEPL really has nothing at all to do with discrimination, but rather simply requires that all employees – regardless of their circumstances – be paid a set amount in wages unless differences are due to a seniority or merit system or shift differential.  As explained in further detail in Acadia's principal brief and the brief of Amicus Chamber of Commerce, this position ignores not only the plain language of the statute but also the practical realities of business in Maine.  But if this Court, and ultimately the Maine Law Court, were to determine that the MEPL is, as the district court held here, a statute of strict liability, applying the draconian penalty of treble damages and attorneys' fees to even a good faith, or unintentional pay difference makes no sense and such a construction should be rejected by this Court.

## III.  CERTIFICATION IS APPROPRIATE IN THIS CASE

Plaintiff's characterization of Acadia's request for certification as an "eleventh-hour" tactical request is grossly unfair. First, there is no deadline to request certification of a question of law by a federal court to the Maine Supreme Judicial Court sitting as the Law Court. In fact, the Maine Rules of Appellate Procedure explicitly provide that Courts of Appeals may certify questions to the Law Court. M.R. App. P. 25(a).

Second, Plaintiff's reliance on *Ken's Foods, Inc. v. Steadfast Ins. Co.*, 36 F.4th 37 (1st Cir. 2022), to argue that Acadia's certification request is "tactical" is misplaced. In *Ken's Foods*, the plaintiff brought purely state-law claims in federal court under diversity jurisdiction and then waited until after it lost at summary judgment to request that the district court certify the issue to the state court. *Id.* at 40. Here, in contrast, Acadia, as the defendant, did not choose the forum. It was Plaintiff who chose to pursue her MEPL claim in federal court and ultimately dismissed all of her federal law claims. App. 137.  The plaintiff in *Ken's Foods* was admonished for forum shopping when it requested certification because it could have had the state's highest court weigh in at the outset by initiating its lawsuit in state court. *Id.* at 44-45. That concern is not present here, where it is conversely the defendant who seeks certification and never had a chance to choose the forum in the first place.

More significantly, in *Ken's Foods*, even in light of the plaintiff's blatant forum shopping, this Court still certified the question to the state's highest court because of the strong policy reasons favoring certification, including the important questions raised that were likely to arise in future cases. *Id.* at 45. Here, there is no question that this case raises important questions that will have implications beyond the parties. *See* Br. of Maine State Chamber of Commerce at 1 ("An interpretation of Maine's Equal Pay Law . . . imposing strict liability on employers . . . will undoubtedly stifle Maine employers' ability to actively and effectively recruit qualified candidates to the Maine workforce."); Br. of Amici ACLU at 3 ("The interpretation and application of Maine's Equal Pay Law . . . is of immense concern to the ACLU, the ACLU of Maine, the National Women's Law Center, their civil rights clients seeking justice, and their members and supporters.").

In addition, unlike in *Ken's Foods*, Acadia did not wait for an adverse ruling before seeking certification. The District Court initially denied Plaintiff's motion for oral argument on her partial motion for summary judgment. App. 4. The District Court then changed course and decided to hold oral argument specifically to address the proper interpretation of the MEPL. App. 96. District Court Judge Walker raised the issue of certification at oral argument and expressed his reluctance to answer the question of first impression involving the interpretation of the MEPL. App. 127 ("I feel some amount of modesty having not given the [L]aw

[C]ourt an opportunity to take a first swing at this."). Plaintiff's response to Judge Walker's hesitation was to highlight the fact that this was very much a "federal case" because of her Title VII claims. App. 128. But that is no longer true. The only claim that remains is the MEPL claim. Any reluctance the District Court expressed is now amplified by the fact that Plaintiff has abandoned her federal law claims.

Acadia recognized the District Court's hesitation as to the lack of guidance from the Law Court and promptly filed its Motion for Certification of Question of Law to the Law Court. App. 4. Even so, this Court has certified questions to the Law Court on appeal from summary judgment. *See, e.g., Reagan v. Racal Mortg., Inc.*, 1998 ME 188, ¶ 1, 715 A.2d 925, 926 (First Circuit seeking interpretation of Maine Consumer Code after District Court entered summary judgment). Contrary to Plaintiff's contention, there is nothing dilatory and tactical about Acadia's request for the First Circuit to certify the question to the Law Court.

Here, the Law Court has never expressly weighed in on the important issues raised in this appeal related to the interpretation of the MEPL and the appropriate damages. This appeal presents a determinative and unsettled question of Maine law with "uniquely local policy interest at stake" that will undoubtedly have a significant impact on the workers and employers in Maine far beyond the parties involved here. *See Portland Pipe Line Corp. v. City of S. Portland*, 947 F.3d 11,

13, 18 (1st Cir. 2020), *certified question answered*, 2020 ME 125, 240 A.3d 364

(certifying three questions to the Law Court where questions of state law were

"unresolved and may prove dispositive" of the lawsuit). The Law Court has

explained that:

> Wherever reasonably possible, the state court of last resort should be given opportunity to decide state law issues on which there are no state precedents which are controlling or clearly indicative of the developmental course of the state law because this approach (1) tends to avoid the uncertainty and inconsistency in the exposition of state law caused when federal courts render decisions of state law which have an interim effectiveness until the issues are finally settled by the state court of last resort; and (2) minimize[s] the potential for state-federal tensions arising from actual, or fancied, federal court efforts to influence the development of state law.

*Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41, ¶ 6, 157 A.3d 223 (quoting

*Bankr. Est. of Everest v. Bank of Am., N.A.*, 2015 ME 19, ¶ 14, 111 A.3d 655

(marks omitted)).

Given the lack of guidance from the Law Court and the interests at stake

here, certification is not only appropriate but it is also the wiser course. *See, e.g.,*

*Town of Castle Rock, v. Gonzales*, 545 U.S. 748, 778, 125 S. Ct. 2796, 2816, 162

L. Ed. 2d 658 (2005) (J. Stevens dissenting) ("[C]ertification would promote both

judicial economy and fairness to the parties. After all, the Colorado Supreme Court

is the ultimate authority on the meaning of Colorado law, and if in later litigation it

should disagree with this Court's provisional state-law holding, our efforts will

have been wasted and respondent will have been deprived of the opportunity to

have her claims heard under the authoritative view of Colorado law.); *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S. Ct. 1741, 1744, 40 L. Ed. 2d 215 (1974) (recognizing that certification "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism."). Acadia urges this Court to certify the question presented in its principal brief to the Law Court for resolution of this important, novel issue of Maine law.

## CONCLUSION

Based on the foregoing reasons and those presented in Acadia's principal brief, the District Court's order granting Plaintiff's Motion for Partial Summary Judgment should be vacated. Alternatively, the question of Maine law set forth in Acadia's principal brief should be certified to the Maine Supreme Judicial Court sitting as the Law Court.

Dated: October 12, 2022

/s/ *Melissa A. Hewey*
Melissa A. Hewey
(First Circuit Bar No. 40774)

/s/ *Kasia S. Park*
Kasia S. Park
(First Circuit Bar No. 1173974)

Attorneys for Appellant Acadia

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
(207) 772-1941
mhewey@dwmlaw.com
kpark@dwmlaw.com

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,586 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using serifs in Times New Roman 14 point font.


Dated: October 12, 2022          */s/ Melissa A. Hewey*
                                 Melissa A. Hewey
                                 First Circuit Bar No. 40774
                                 *Attorney for Appellant Acadia*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME  04101-2480
Tel: (207) 772-1941
mhewey@dwmlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2022, I electronically filed the Reply Brief of Appellant Acadia Hospital Corp. with the U.S. Court of Appeals for the First Circuit by using the CM/ECF system which will send notification of such filing(s) to counsel of record.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

David G. Webbert, Esq.
Johnson & Webbert
160 Capitol Street, Suite 3
P.O. Box 79
Augusta, ME  04332-0079
dwebbert@work.law

Valerie Z. Wicks, Esq.
Andrew Schmidt Law PLLC
97 India Street, 2nd Floor
Portland, ME  04101
val@maineworkerjustice.com

Janna L. Gau, Esq.
Kady S. Huff, Esq.
Eaton Peabody
80 Exchange Street
P.O. Box 1210
Bangor, ME  04401
jgau@eatonpeabody.com
khuff@eatonpeabody.com

Carol J. Garvan, Esq.
Zachary L. Heiden, Esq.
Anahita Sotoohi, Esq.
ACLU of Maine Foundation
P.O. Box 7860
Portland, ME  04112
cgarvan@aclumaine.org
asotoohi@aclumaine.org

Sunu Chandy, Esq.
National Women's Law Center
11 Dupont Circle, NW Suite 800
Washington, DC 20036
schangy@nwlc.org

Gilliam Thomas, Esq.
ACLU Foundation
Women's Rights Project
125 Board Street
New York, NY  1q0004
gthomas@aclu.org

Dated: October 12, 2022

/s/ Melissa A. Hewey
Melissa A. Hewey
First Circuit Bar No. 40774
Attorney for Appellant Acadia

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME  04101-2480
Tel: (207) 772-1941
mhewey@dwmlaw.com